UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ENNIO MUNNO,

                Plaintiff,

      - against -                        03 Civ. 8650 (CM)

THE TOWN OF ORANGETOWN; THOM KLEINER,
EDWARD FISHER, MARIE MANNING, DENIS
TROY, AND DENIS O'DONNELL in their individual
and official capacities as Town Board members and
acting as the Orangetown Police Commission; and
KEVIN NULTY, in his individual capacity,

                Defendant.

------------------------------------------------------------x

## ORDER AND DECISION GRANTING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

    Plaintiff Ennio Munno ("Munno") filed this action for damages against Defendants the Town of Orangetown; Thom Kleiner, Edward Fisher, Marie Manning, Denis Troy, and Denis O'Donnell, in their individual and official capacities; and Kevin Nulty, chief of the Orangetown Police Department (collectively "defendants"). Plaintiff alleges that defendants wrongfully and unlawfully suspended him without pay from the police force in violation of his Fourteenth Amendment right to due process. Plaintiff further alleges malicious prosecution on the part of Defendant Kevin Nulty. Plaintiff seeks actual and compensatory damages, punitive damages and attorneys fees for his alleged loss of employment and income, loss of employment benefits, injury to career, embarrassment, distress, humiliation, and injury to personal reputation. Defendants move to dismiss the action for failure to state a claim.

**Facts**

The relevant facts, as alleged in the Complaint, documents "integral" to the Complaint, and documents of which the court has taken judicial notice, are as follows:

Plaintiff has served as a police officer in the Town of Orangetown since June, 1997. Complaint ("Cplt.") ¶ 10. In May, 2002, plaintiff learned that a civilian complaint had been filed against him for allegedly engaging in sexual activity with a civilian while on-duty and for unlawfully accessing the civilian's confidential motor vehicle records. Cplt. ¶ 12; Verified Petition ("Pet.") ¶¶ 50-54. On May 17, 2002, an internal affairs interview was conducted with respect to this alleged activity. Pet ¶ 20. On June 19, 2002, Defendant Nulty, in his capacity as chief of police, transferred plaintiff from street patrol to a desk position. Cplt. ¶ 13. On June 25, 2002, plaintiff was served with proposed disciplinary charges based upon his alleged misconduct. Pet. ¶ 11. Plaintiff was served with a second set of disciplinary charges on July 16, 2002, alleging that plaintiff had been untruthful during his internal affairs interview. See 7/16/02 Disciplinary Charges. Both sets of proposed charges provided plaintiff with notice of the precise dates, locations, and nature of his alleged misconduct, as well as citations to the applicable Orangetown Police Department rules and regulations. See 6/25/02 Disciplinary Charges; 7/16/02 Disciplinary Charges. On July 26, 2002, plaintiff was served with formal disciplinary charges based on his alleged misconduct and, the following month, was criminally charged with harassment in the second degree in violation of PL § 240.20. Cplt. ¶ 15. On September 5, 2002, plaintiff was suspended without pay from the police force pending the outcome of his criminal case. Cplt. ¶ 17.

Following his suspension, plaintiff filed an action in the New York State Supreme Court seeking declaratory and injunctive relief on the ground that his disciplinary charges were

untimely under the Rockland County Police Act ("state court action"). Cplt. ¶ 19; Pet. ¶ 7-34. On April 2, 2003, the Rockland County Supreme Court granted Munno's motions for preliminary injunction and summary judgment, permanently enjoining defendants from conducting any disciplinary proceeding against Munno. See 4/2/03 Decision and Order. Subsequently, on December 20, 2004, the Appellate Division, Second Department, reversed this decision, holding that the disciplinary charges against Munno were timely served. That court dismissed Munno's petition and entered summary judgment in favor of defendants. Munno v. Town of Orangetown, 13 A.D.3d 538, 786 N.Y.S.2d 576 (2d Dep't 2004).

On October 31, 2004, while appeal was pending in the state court action, plaintiff filed the present action, alleging deprivation of both property and liberty interests in violation of the Due Process Clause of the Fourteenth Amendment, as well as a pendant claim under New York State law for malicious prosecution. Defendants move to dismiss these claims under Rule 12(b)(6).

**Discussion**

    1.    Standard of Review

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether the plaintiff ultimately is likely to prevail, but whether he is entitled to offer evidence to support his claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in the plaintiff's favor. EEOC v. Staten Island Sav.

3

Bank, 207 F.3d 144, 148 (2d Cir.2000).

As a general rule, "[i]n considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991). However, the court has recognized several exceptions to this rule. For example, it is well-established that the court may consider a document, even if not attached or incorporated by reference, where the complaint "relies heavily upon its terms and effect," thus rendering the document "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," the court may consider the documents without converting the Rule 12(b)(6) motion into a motion under Rule 56. Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)). In Thomas v. Westchester County Health Care Corp., plaintiff objected to the court's consideration of a disciplinary hearing transcript and Report of the Impartial Hearing Officer, both of which were attached to defendants' motion to dismiss. Thomas, 232 F.Supp.2d 273 (S.D.N.Y. 2002). The court found that, while the documents were not attached to or incorporated by reference in the complaint, the documents were "integral" to plaintiff's discrimination claims, as "[plaintiff] must rely on the contents of the Transcript and Report in order to explain what the actual unlawful course of conduct was on which the Defendants embarked." Id. at 276. Therefore, the Thomas court concluded that, [b]ecause these documents are integral, because [plaintiff] knew of and

4

possessed them, and because there is no dispute as to their authenticity, the Court may consider them without converting the Defendants' motion to dismiss into a motion for summary judgment." Id.; see also Chambers, 282 F.3d at 153 (holding that consideration was appropriate of certain contracts attached to the defendant's motion to dismiss, as "[t]he Amended Complaint is replete with references to the contracts," and "they are integral to the Amended Complaint"); Furman v. Cirrito, 828 F.2d 898, 900 (2d Cir. 1987) (relying on partnership agreement and contract of sale in action by minority against majority members of partnership where such agreements were "integral parts of appellants' claim and of the record before us").

The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint. See Thomas, 232 F.Supp.2d at 275; Leonard F. v. Israel Discount Bank of New York, 210 F.3d 99, 107 (2d Cir. 1999). In particular, the court may take judicial notice of public records and of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." Harris v. New York State Dep't of Health, 202 F.Supp.2d 143, 173 (S.D.N.Y. 2002); see also Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice on Rule 12(b)(6) motion of public documents filed with SEC and noting that "it is highly impractical and inconsistent with Federal Rule of Evidence 201 to preclude a district court from considering such documents when faced with a motion to dismiss . . ."); Thomas (holding that "the Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment"), 232 F.Supp.2d at 276; 5-Star Mgmt., Inc. v. Rogers, 940 F.Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice of

5

pleadings in other lawsuits attached to defendants' motion to dismiss).

Plaintiff objects to defendants' reliance on several documents that were neither attached to nor incorporated in the Complaint. These documents include (1) the disciplinary charges filed against plaintiff which underlie the present action; (2) selected provisions of the Collective Bargaining Agreement between the Town of Orangetown and the Orangetown Policemen's Benevolent Association; (3) affidavits and/or pleadings filed by plaintiff in the state court action which allegedly contradict statements made by plaintiff in the Complaint filed in this action; and (4) two letters written by plaintiff's counsel in the state court action which allegedly contradict plaintiff's allegations in the present matter. Based on the exceptions outlined above, it is appropriate for the court to consider each of the above-referenced documents without converting defendants' motion to dismiss into a motion for summary judgment. The first two sets of documents – the underlying disciplinary charges and sections of the Collective Bargaining Agreement – are "integral" to the Complaint, as plaintiff had actual notice of both and has relied heavily upon both in framing the Complaint. See Thomas, 232 F.Supp.2d at 276. The court takes judicial notice of the remaining documents, namely the affidavits and/or pleadings submitted by plaintiff and letters written by plaintiff's counsel in the state court action, as these public documents allegedly contain statements by plaintiff which contradict the factual allegations contained in the Complaint. See Harris, 202 F.Supp.2d at 173.

2.   Fourteenth Amendment Due Process

A two-step inquiry is required to determine whether a plaintiff has suffered a violation of his due process rights in the employment context. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). First, the court must determine whether a protected property or liberty

interest exists. Id. Second, the court must consider whether the government deprived plaintiff of that protected interest without due process. Id; see also Narumanchi v. Bd. of Tr. of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

      A.    *First Cause of Action*

In his first cause of action, plaintiff alleges that, by being suspended without pay, he was deprived of a protected property interest in continued employment.[1] While property interests are created and defined by state law, "federal constitutional law determines that the interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 782 (2d Cir. 1991). The court recognizes that "[a] public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). However, in this case plaintiff was *suspended* not *terminated*, and "there is little guidance in the decisions on the questions of whether and when an unpaid suspension from a position that is otherwise protected by the Due Process Clause itself rises to the level of a property interest." Thomas v. Zaharek, 289 F.Supp.2d 167, 176 (D.Conn. 2003). Indeed, "[c]ourts in this circuit have differed in answering the question whether a suspension without pay comprises a cognizable property interest pursuant to the Fourteenth Amendment." Ware v. City of Buffalo, 186 F.Supp.2d 324, 333 (W.D.N.Y. 2001). Fortunately, it is unnecessary for the court to resolve this unsettled issue of law.

---

[1] It should be noted that Munno had been suspended for approximately 35 days when he commenced the state court action and obtained a temporary stay of his disciplinary proceeding. See Baumgartner Aff. in Support of TRO and Preliminary Injunction ¶ 24. As a result, any additional period of suspension beyond the initial 35 days was due to plaintiff's own elected course of action.

Assuming *arguendo* that plaintiff enjoyed a protected property interest in not being subjected to unpaid suspension, the court finds that plaintiff was afforded adequate due process under the Fourteenth Amendment.

It is well-established that due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (citing Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886, 895 (1961)). Rather, it "is flexible and calls for such procedural protections as the particular situation demands." Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In determining what process is due, the court must balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

In this case, the notice and opportunity to be heard enjoyed by Munno satisfy the requirements of the Due Process Clause. Plaintiff was informed of the charges against him more than three months prior to his suspension in September, 2002. Additionally, he was served with proposed disciplinary charges on June 25, 2002 and July 16, 2002, and served with formal disciplinary charges on July 26, 2002. Both sets of proposed disciplinary charges provided plaintiff with the precise dates, locations and nature of his alleged misconduct, as well as citations to the applicable Orangetown Police Department rules and regulations. The recent appellate decision in Munno's state court action underscores the conclusion that plaintiff had

adequate notice. In reversing the decision of the Rockland County Supreme Court, upon which plaintiff relied heavily in opposing defendants' motion to dismiss this action, the Second Department held that Munno was provided with "notice" upon receipt of the proposed disciplinary charges against him– more than two months prior to his suspension. Munno, 786 N.Y.S.2d at 579. Moreover, plaintiff had ample opportunity to be heard on the charges against him. Prior to his suspension, plaintiff engaged counsel and interposed answers, and appeared with counsel at the May 17, 2002, internal affairs interview.

However, even if plaintiff was not provided adequate due process prior to his suspension, he has failed to state a claim for violation of the Fourteenth Amendment's Due Process Clause. Although the law favors pre-deprivation process, "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Id.; see also FDIC v. Mallen, 486 U.S. 230, 240 (1988) (finding that the state may be justified in "postponing the opportunity to be heard until after the initial deprivation," where there is an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted"). This action, like Gilbert, presents such a case.

In Gilbert, the plaintiff, a police officer employed at a Pennsylvania state college, was suspended without pay following his arrest in a drug raid and resulting felony charge. While all criminal charges were dismissed five days later, the suspension remained in effect pending completion of the university's investigation. Ultimately, the plaintiff was demoted to the position of groundskeeper and reimbursed with back pay at the lower rate assigned to that position. Applying the Mathews balancing test, the Court concluded that when faced with

9

*temporary suspension* without pay, in contrast to *termination* of employment, failure to provide the plaintiff with a pre-suspension hearing did not violate procedural due process so long as the plaintiff received a sufficiently prompt and thorough post-suspension hearing. Gilbert, 520 U.S. at 932.

Because the factual scenario presented in Gilbert is substantially similar to that at issue in the present case, the Gilbert Court's analysis is particularly instructive. As in Gilbert, the first prong of the Mathews test weighs against a due process violation, as Munno's "lost income is relatively insubstantial (compared with termination)." Id. The second prong likewise weighs against plaintiff's claim, as reasonable grounds to support the suspension without pay "had already been assured by the arrest and the filing of the charges," thus eliminating the need for a pre-suspension hearing to determine the existence of such reasonable grounds. Id. at 933. Finally, as in Gilbert, Munno's interest was outweighed by the government's "significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great trust and high public visibility, such as police officers." Id. at 932. The court concludes, therefore, that under the Mathews test and its application in Gilbert, even if Munno had a protected property interest in continued employment, and even if he was not afforded adequate due process prior to his suspension, plaintiff has failed to state a claim for violation of his Fourteenth Amendment due process rights.

    B.    *Second Cause of Action*

Plaintiff's second cause of action alleges that he was deprived of a liberty interest in his good name and reputation without notice or a meaningful opportunity to be heard. To establish a claim for violation of a liberty interest under the Fourteenth Amendment, plaintiff must satisfy

the "stigma-plus" standard, which requires a showing that (1) he was defamed; and (2) the defamation occurred in the course of the termination of his employment, or was coupled with a deprivation of a legal right or status.  Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).

Plaintiff has failed establish defamation as required by the first prong of the "stigma-plus" test.  To establish defamation, "the plaintiff[] must show that the statements complained of were false; that they stigmatized the plaintiff[]; and that they were publicized."  Id. at 101-2.  Simply stated, the Complaint fails to allege that defendants published any false statements about Munno that stigmatized him or seriously damaged his professional reputation.  In fact, plaintiff concedes that "there was no public discussion of the reasons for the suspension" and that the September 5, 2002, meeting, at which his suspension was ordered, was "closed to the public."  Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 12.

Plaintiff argues that the publication requirement is "satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers."  However, this is irrelevant because plaintiff was not *discharged* from his position.  Additionally, the Complaint contains no allegation that any stigmatizing charges were placed in plaintiff's personnel file.  The fact of plaintiff's suspension, in and of itself, simply is not sufficient to satisfy the publication requirement; it is merely a statement of fact.  See John Gil Const., Inc. v. Riverso, 99 F.Supp.2d 345, 355 (S.D.N.Y. 2000) (holding that the fact that a criminal investigation of the plaintiff was being conducted was "merely a statement of fact and cannot give rise to a liberty-interest due process violation").

Plaintiff also has failed to allege any specific harm suffered as a result of the alleged defamation.  A plaintiff cannot rely merely on the "deleterious effects which flow from sullied

11

reputation" such as "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." Schlesinger v. New York City Transit Auth., 2001 WL 62868, at *21 (S.D.N.Y. Jan. 24, 2001). Equally insufficient to implicate the Due Process Clause are conclusory statements that the accusations at issue harmed a future job opportunity or potential promotion. Id. at *24 (citing Yuan v. Rivera, 1998 WL 63404, at *5 (S.D.N.Y. Feb. 17, 1998)). In the absence of publication of any statements, and specific and substantial harm or stigma, plaintiff fails to state a claim for deprivation of a protected liberty interest.

Finally, plaintiff cannot satisfy the second prong of the "stigma-plus" test, as he was not *terminated* from his employment with the Police Department, and he fails to allege a deprivation of a "legal right or status." Although the Second Circuit recently observed that, outside of the termination context, "it is not entirely clear what the 'plus' is," DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003), at least two courts in this Circuit have concluded that a suspension without pay does not satisfy the "plus" requirement. See Schlesinger, 2001 WL 62868, at *24 (holding that a thirty-day suspension does not involve a deprivation of a right or status for purposes of establishing a protected liberty interest); Komlosi v. Fudenberg, 2000 WL 351414, at *6 (S.D.N.Y. March 31, 2000) ("As a matter of law . . . suspension without pay is not a sufficient 'plus' factor to give rise to a protected liberty interest"). This court agrees with that analysis. In the absence of either termination or deprivation of a legal right or status, plaintiff fails to state a claim for violation of his due process rights.

3. Malicious Prosecution

Plaintiff's final cause of action alleges a pendant state law claim for malicious

Plaintiff's final cause of action alleges a pendant state law claim for malicious prosecution against Defendant Nulty. Having dismissed plaintiff's underlying federal claims, however, the court declines to exercise pendant jurisdiction over the remaining state law claim. See, e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995) (same); Twin City Bakery Workers & Welfare Fund v. Astra Atkiebolag, 207 F.Supp.2d 221, 225 (S.D.N.Y. 2002) (same). Accordingly, plaintiff's malicious prosecution claim is dismissed without prejudice.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss the Complaint is GRANTED. This constitutes the decision and order of the Court.

Dated: October 12, 2005.

_____
U.S.D.J.